The appraiser's report is confirmed.

---

ROCKLAND COUNTY.—HON. GEORGE W. WEIANT, SURROGATE.—October, 1888.

MATTER OF BLAKENEY.

*In the matter of the judicial settlement of the account of* DAVID W. KIPP *and ·another, as the executors of the will of* HANNAH M. BLAKENEY, *deceased.*

The value of the personal estate of the decedent over all her debts which determines under section 2736 of the Code of Civil Procedure whether

each executor or administrator is entitled to full commissions, upon the ground that such value is one hundred thousand dollars or more, is the value of the estate at the time of the final accounting of the executor or administrator, and not at the death of the decedent.

THE deceased testatrix died December 12, 1886. Letters testamentary of her will were granted January 7, 1887. An inventory of her personal estate was filed in this office on the 4th day of March, 1887, which disclosed the value of her personal estate to be $96,786.70. This proceeding for and accounting was commenced on June 15, 1888, upon the petition of the executors and wherein their accounts were filed July 20, 1888, by which it appears that the assets of the estate were then of the value of $101,189.47.

The executors claimed double commissions upon this sum under section 2736 of the Code of Civ. Pro., which provides that where the value of the personal estate of the decedent amounts to one hundred thousand dollars or more over all his debts, each executor or administrator is entitled to the full compensation allowed by law to a sole executor or administrator unless there are more than three.

To the allowance of these double commissions, the legatees and next of kin object, claiming that to bring a case within this section it is requisite that the estate *at the time of the death* of the decedent should be of the value of $100,000.

A. & A. F. FALLON, *for* DAVID W. KIPP, *and another, executors.*

WM. E. GOWDEY, *for contestants.*

THE SURROGATE.—Upon the submission of this question to me for determination, I had the impres-

sion that such was the meaning of the statute. This impression was based upon my understanding that the authorities had placed that construction upon the section.

But after an examination of the decisions, an application of the principles which have been enunciated by the courts bearing upon the question of the compensation, the extent thereof, upon what based, and when earned and payable, of executors and administrators, and a consideration of the practical application of the language of the statute under the construction contended for by the respective parties, I have reached the conclusion that my former impression was erroneous.

The statute by its language contemplates a determination or finding of the *value* of the estate and of the *debts* in order to ascertain whether or not full commissions are allowable to each executor.

Now when and how does the statute contemplate that this should be done ? Is it by the making and filing of the inventory ? The statute, if such were the intention, could and would most probably have been made thus specific. In the administration of estates an inventory is not made in any sense conclusive as to values and forms no fixed basis for a judicial determination.

It is merely a piece of evidence open to impeachment by any interested party. It is, in a sense, an *ex parte* fixing of values to assets and made under the supervision of the executor. If that alone is to serve as the basis for a determination of the value of the assets, what is there to prevent the executor in

collusion with the appraisers from fixing untrue or fictitious values to assets uncertain in value or quite worthless in order to bring the aggregate high enough to entitle him to the increased compensation? He will be thus made a principal actor in fixing his own compensation. The legislature surely never intended to clothe him with such power. No method of review of this valuation is provided except upon an accounting. It seems to me that as the statute is silent as to how or when this value of the personal estate shall be ascertained, it is fair to assume that these questions are to be determined in the method prescribed for the settlement of estates by accountings, and that a determination of the value of the estate is contemplated in that way.

Commissions of an executor cannot be retained until allowed by judicial determination in an accounting. Wheelwright v. Rhoades, 28 *Hun* 57; U. S. Trust Co. v. Bixby, 2 *Dem.* 494; Freeman v. Freeman, 4 *Redf.* 211. Not only the allowance of commissions but the amount thereof is then fixed and this involves the valuation of the assets or estate. This value must be judicially determined, and this can and should be done only in an accounting to which all interested persons are parties.

Again, the amount of the debts must be determined. As to how and when this shall be done the statute is also silent. The time and method of ascertaining the debts in the administration of an estate and the settlement thereof is prescribed by statute. As no method is provided for ascertaining the amount of the debts in order to decide the question of allowance

of additional commissions, it is reasonable to suppose that they are to be ascertained in the usual method prescribed by the statutes regulating the administration of estates. Now if the "value" of the estate and the amount of the "debts" of the decedent are to be determined by the usual methods and upon an accounting, then it seems to me that the "value" as then and thus found is the value that is to be taken as the basis from which to adjudge whether or not double commissions are allowable.

It may be urged that for the purpose of the determination of the right to the additional commissions that the accounting may relate back to the time of the death of the decedent, but this would then involve a double examination—one to ascertain the value at the time of the decedent's death and another for the purpose of fixing the value of the assets for which the executor or administrator is accountable in his administration.

This would cause an additional expense frequently and generally amounting to more than the commissions.

Again, this double examination and valuation would lead to confusion. Assets fluctuate in value. A bond and mortgage worth its face at the time of the death of the decedent may, before it could be converted into cash, greatly depreciate. Stocks and bonds may increase or decrease materially in value—may indeed become worthless. In the instances where the assets had decreased, if the value at the time of the death of the decedent were to prevail, then the executor or administrator claiming double commissions

would, contrary to the prevailing rule, not only get commissions on depreciated or worthless assets at their then full value but also secure double commissions upon such. These, among other circumstances and considerations, have led me to the conclusion that the only construction of this statute that will lead to an orderly, systematic and uniform determination of the value of the estate over the debts is to adopt the value at the time of the accounting as the "value of the personal estate of the decedent."

I do not believe that the legislature intended to fix one time as of which the value should be determined for the purpose of double commissions, and another for the purpose of single commissions, which would be the case if the contention of the legatees herein should prevail.

Against the construction I have adopted it may be urged that executors and administrators may be tempted to delay accounting for the purpose of having the estate by income or otherwise reach an aggregate that will come up to the $100,000 limit. But, in answer to this, it may be said that the executor or administrator cannot thus abuse his trust if the persons interested in the estate see that he is brought to a prompt accounting.

But it may be argued with even greater force from the opposite side, that an executor in fixing the value of the estate as of the time of the death of the decedent will be tempted to give the assets a fictitious value in making the inventory and otherwise so as to secure the double commissions. There will be every incentive for him to overvalue assets and to set

down worthless properties at some valuation, and then upon his accounting claim loss or deterioration from causes uncontrollable by him which must lead to more or less contention and litigation.

I am aware that in several cases which the counsel for the next of kin has brought to my attention, it has been held that the value of the estate at the time of the death of the decedent left to be administered or which comes to a trustee as a trust fund, is the one by which the question is to be determined.

If it is meant to be held that the increase which, in the usual course of administration, as in this one, may not be considered as a part of the estate of a decedent for the purpose of deciding whether or not the value of the estate is sufficient to authorize double commissions, then I do not assent to the correctness of such construction of the statute.

But, however, the learned judges may have expressed themselves on this point, each case is distinguishable from this upon the facts, and the decision is made to turn upon circumstances other than exist in this cause.

In the Matter of Blackwell, decided by Surrogate WELLER, of Queens county (not reported) the learned Surrogate states that the statute "must mean the *corpus* of the estate received from the testator, not as it may be augmented by rents, profits, and accumulations realized after his death." But he adds that upon the " scheme of the will and codicil" annual settlements were contemplated, and the executors will not be allowed *to increase their compensation by*

*neglecting their duties* in that respect until the aggregate of income shall make it amount to over $100,000.

In the Matter of Slosson, 2 *Dem.* 257, I do not think that the learned Surrogate decided the exact question here presented, and certainly not adversely to the claim of the executors. It was there held that in a case of testamentary trusteeship the income arising from the trust fund could not be added to the principal to make up the $100,000.

In distinguishing that case from the Matter of Leggatt, 4 *Redf.* 148, the learned Surrogate says at page 260, " It does not appear upon the statement of the facts that the rents so received were regarded strictly as income . . . . . the rents in question might very properly have been treated as substantially *an accession to personalty and as forming therefore a part of the principal of the estate* rather than of income collected."

Thus within the views of the Surrogate as above expressed, the interest accrued at the time of the accounting, and received by the executors may be treated " as an accession to the personalty and as forming therefore a part of the principal of the estate."

Savage v. Sherman, 24 *Hun* 307, was a case of trusteeship. The rents and income were accounted for and paid over periodically and at *no one time* did the estate amount to $100,000. It was sought to bring all of these several amounts of income into one aggregate with the principal, although the same had been accounted for and paid over, and upon which single commissions had at each accounting been retained.

There are other distinguishing circumstances in the case and upon which the decision was rested which show that the exact point here involved was not directly met and decided. It is said at page 314 that " the amounts from time to time received and disbursed were far below the sum required for the purposes of justifying additional commissions, and these only could be charged upon them which were. legally apportioned to the amounts at the time they were *collected and disbursed.*"

I think that the following authorities sustain the construction of the statute I have adopted. Matter of Leggatt, 4 *Redf.* 148 ; Matter of Mason, 98 *N. Y.* 527 ; Smith v. Buchanan, 5 *Dem.* 169.

In the *Daily Register* of the date of September 18, 1888, there appeared an article upon the question of the proper construction of this section of the Code, reviewing the authorities, and the conclusion there reached is similar to the one at which I have here arrived.

The conclusion there reached is expressed as follows : " That all the property of the estate that comes to their hands in money and is paid out by them, as well as all personalty upon the inventory, is to be regarded when presented *upon one accounting,* as the basis for determining whether several executors are entitled to full commissions."

This expresses my view of the statute, and the increase which came to the estate in the usual course of administration together with the principal of the estate at the time of this accounting being of an aggre-

gate of $100,000 over all debts of the decedent, each executor is entitled to full commissions.